The Honorable Court, all rise. The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before the Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Chief Judge Barron? Yes, you may be seated. I'm unable to join you today in person, but my colleague, as you can see, Judge Kayada, is there in the courtroom, and I hope not too lonely. Judge Howard will still be participating in the case, but is unable to be here as well today. And with that, we're ready to begin. Thank you, Judge. At this time, I'll put us on the record. Today's cases will be called as previously announced. The times will be as allotted to counsel. The case today is number 22-1099, Nilsen Likurgo et al. v. Merrick B. Garland. At this time, would counsel for amicus, Attorney Realmuto, please introduce yourself on the record to begin. Good afternoon. May it please the Court. Trina Realmuto on behalf of Amicus National Immigration Litigation Alliance. With me today in the courtroom are Petitioner's Counsel Carlos Estrada, along with Petitioners Mr. and Mrs. Likurgo and their two children, Ethan and Olivia. I will address, with the Court's permission, sorry, with the Court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you. I will address the potential vehicles for resolution, and Mr. Estrada will address specific questions with respect to Petitioner's case. The Court could elect to resolve this case through either remand or abeyance. But before turning to those mechanisms, I'd like to make two important points about ICE's position in this case. First, Attorney General Garland and Petitioners are seeking to judicially administratively close this case pending a future determination by ICE to proceed with removal. To date, ICE has not made that determination. If and when it does, by Local Rule 18, the government would be required to file a notice of the scheduled removal. Second, ICE cannot unilaterally block administrative closure before the BIA. Under BIA precedent, the BIA must independently assess all six administrative closure factors and close a case even if ICE opposes closure. And it can close a case for a significant or undetermined period of time. In fact, Attorney General Garland, who is the respondent here, restored the availability of administrative closure and restored those precedents in his decision in matter of Cruz Valdez. Second, we don't know whether ICE would oppose administrative closure. Opposing counsel says that it's unlikely that they would agree to administrative closure. But that's pure speculation because ICE has never assessed this case for prosecutorial discretion under this administration's current enforcement policies as set forth in the Mayorkas and Doyle memos. That's because the Doyle memo was issued after the BIA issued its decision in its case and the memo was enjoined while this case was in mediation. In fact, those memos have not yet taken effect because although the Supreme Court issued its decision in the United States versus Texas on June 23, the case has to make its way back to the district court before the injunction on those memos can be lifted. So are you suggesting that ICE has a policy or that BIA has a policy that if the matter were now before the BIA rather than us, you could ask for or seek administrative closure and there would be a set of rules or regulations or practices governing it? Yes, I'm suggesting that the board's precedent decision in matter at Devisian would apply and that would require the weighing of six factors. And are you further suggesting that we would have jurisdiction to review that decision? If the case, yes, you could retain jurisdiction and it could come back and you could review whether or not. But given how discretionary administrative closure is, how would we review a decision? Well, I should say it would depend on what the board's decision said if there was an error in applying the test. But then if I also understand that you don't want us now to, how would we remand for the board to consider that if the board hasn't already considered it and there was no request that it do so below? Well, I think there's two options for remand here. The court could, of course, remand on the merits because under this court's precedent in Ex Cuna Garcia and Molina Diaz in matter of LAC, the applicants here themselves did not have an opportunity to explain the lack of corroboration. It was all on the attorney and the statute says it has to be the applicants. So that would just position this as a normal merits case. We would decide the merits. If we ruled for you, we would remand. But you could also remand and retain jurisdiction as this court has done in other immigration cases to consider a new legal development. And we would submit that that new legal development is the fact that the ICE can now consider prosecutorial discretion under the current enforcement priorities that will take effect as soon as the injunction is lifted. And can I ask something I don't understand related to that small point, which is I thought the point of the camp mediation was to address this type of question. And then the representation back to us is that camp failed to come to a resolution. But you're telling us that that camp proceeding occurred at a time in which the consideration of prosecutorial discretion that you're asking them to make couldn't have been considered by them because they were joint relying on the policy that would support it? Right. So the government's position has been that the agency always has prosecutorial discretion under traditional factors. The change here is that with the Supreme Court's decision, it puts the majoricus and doyle policies back in play. And we don't know when did that become evident post-camp? What was the timing? Just when it was determined. Sure. Camp was in October and December of 2022. And the Supreme Court's decision in the United States versus Texas was June 23rd. And have you had any conversations with the government since then that would give us any insight into whether they think that's changed the scenario so that camp would be useful again? I would defer to government counsel and petitioner's counsel on that point. But all I'm saying is that if this case goes back before administrative closure before the BIA, the BIA can make that assessment. And even if ICE doesn't want to administratively close the case, the board would be obligated to balance the factors in the test. And ICE would be obligated to come up with a persuasive reason why this case should be administratively closed. Just so I'm clear, you're assuming we could do that and retain jurisdiction? If we... And that would involve when we have to change the mandate because the mandate would have to issue in order to vacate the... Well, I would submit that there's authority from this court, both in precedent decisions and immigration cases, in order to do that. And that would be Century Main Power versus FERC, 252 F3rd 34, and Town of Weymouth versus Massachusetts Department of Environmental Protection, 961 F3rd 34. And in addition, I would refer the court to two immigration cases in which the court allowed remand to the BIA to consider a new legal development and retains jurisdiction and kept the stay in place, kept Rule 18 in place. And that's Prieto-Castillo versus Garland, 21-1620. And Garcia? It wouldn't be... You wouldn't vacate the order of removal. You would just remand to consideration that while it's pending with us. Is that the idea?  How does Weymouth... I mean, in Weymouth, we found an error in the decision-making below the field. Right. So we obviously had grounds to remand because we've made a judicial finding of error. Right. You're asking us here to apply that where we make no finding of error. Well, I submit... If I could finish the question, I see my time is up. But I would submit that you could make an error finding on the merits. But if you didn't, Town of Weymouth stands for the proposition, just like the other case I cited, that remand without vacater is within the court's reviewing authority, discretion, and that factors in that assessment include the balance of equities and public interest considerations. Oh, I'd like to reserve the rest of my time for Rob. Before you stop, I just have one more question. Could you address the Ninth Circuit's reasoning about judicial administrative closure? And I wasn't quite clear what the argument is for why judicial administrative closure applies in this type of circumstance when we're not waiting on any other tribunal. Well, so with respect to the Ninth Circuit's decision in Sarkar, that is an affirmation of the court's ability to manage this object. Yeah, but they then explain that the circumstance that's akin to this one, where the only reason for judicial administrative closure is to wait for the executive branch to make a determination, isn't a good reason to use it. Right, so I would submit that this case is different because there are actually three reasons that judicial administrative closure could be appropriate. One is to wait the determination, which was the same thing that happened in the Ninth Circuit, but there were sort of varying factors there. Second, to wait for petitioner's eligibility for adjustment of status to ripen, which will happen. And third, at a minimum, to await the Supreme Court's decision in Wilkinson, which will speak directly to this court's jurisdiction over the hardship question presented in this case. The third one, I guess, depends on how much we think Wilkinson would bear on the merits. Yes, but the second one, I just want to understand that, that would be a seven-year, roughly speaking, seven years until the petitioner would be eligible to apply? Right, until Ethan turned 21, in which case he could petition. If the court has concerns about judicial administrative closure and putting the case on an inactive docket for that period of time, you know, I would, again, sort of bring the courts to laymen, which said that- But the layman was waiting for a tribunal to act, and this is quite different. There's no tribunal that has to act in order for us to make our decision. Right, and this is actually in the heartland of administrative closure before the BIA, because the BIA has clearly said cases can linger for a significant and indeterminate period of time. But I guess I was just trying to find a case about judicial administrative closure. It's hard to find one that matches this type of circumstance. Yeah, I think Sakhar from the Ninth Circuit is sort of the most expansive on the administrative closure authority in the immigration context. Of course, this is the Second Circuit's decision in in-write petitions for review, and Jacobson, which the Second Circuit adopts a similar policy, in a sort of more convoluted way, the Ninth Circuit's process, which, by the way, the Ninth Circuit is currently granting admin closure as left, right, and center. It's not that Sakhar makes admin closure go away. It's just that the courts tie it now to some period or some definite event. We know what kind of things they're tying it to. Yeah, post-conviction relief, waiting for an I-130 visa petition to be adjudicated, waiting for a decision from USGIS on a collateral application, all kinds of immigration issues that affect removal proceedings but are not front and center in the petition for review, such as here where we have eligibility for adjustment of status, and certainly a strong case for adjustment of status that it would be granted as soon as the petition can be filed when Ethan turns 21. So do you see this as a one-off decision, in other words, simply because there's just been a change in the BIA's ability to consider these issues? So, or do you... I mean, one of the concerns is we don't have... You can walk through this whole building, you're not going to find any cobble hole anywhere labeled administrative closure. We'd be creating a new status for the court, and then what else goes into that status? What about criminal cases where there is negotiations on a plea agreement or something? Well, it certainly could be limited to the civil context. It would create an inactive docket for the court, and of course if the court has concerns with that, it could default to its traditional abeyance process under FRAP 27 and Local Rule 27. The only difference is that would generally require additional status reports, and that would be on the docket. One last question from me. What is the advance to you of us doing as judicial administrative closure? I know that's not your preferred option, but as opposed to just going to the merits, and I realize that if you lose on the merits, that's not a preferred option, but what does judicial administrative closure do practically that forces all to move? Well, it creates a mechanism that allows this court and the parties to conserve its resources, because if the parties agree that ICE is not going to make a determination to proceed with removal, then it does make sense to proceed. I understand that they make an agreement not to proceed with removal. What is judicial administrative closure? That's not going to reflect any agreement necessarily, is it? At least in the Ninth Circuit and the Second Circuit, it reflects the agreement to keep the case inactive until such time as ICE would move forward, because the question is, does the court want to spend its resources adjudicating cases when ICE is not going to effectuate the removal or doesn't want to effectuate the removal? So isn't it beneficial to activate the court when that removal is more likely to happen? But we have all sorts of cases in which at the outset of the case, the government takes the position they're not now, nor do they have any present plans for removal. Would you put all those on administrative closure until there's removal in the wings? Right. Judicial administrative closure could create a process whereby the resources of the parties in the court were not expended until such time as the agency indicates that it's interested in moving forward. I will say that in Jacobson, in the Second Circuit's decision in Immigration Petitions for Review, the proposal that the government, Office of Immigration Litigation and ICE, gave to the court, which the court did not accept, was that they would move to remand those cases for the BIA to consider administrative closure. So if that is a concern for the court of having an inactive docket, that is an option that becomes more attractive because then the case can sit on the BIA's inactive docket as opposed to this court. And lastly, suppose we just go to the merits and we issued a decision. And suppose the decision came out to be an affirmance. Then ICE is not required to remove. ICE is never required to remove. So you could end up sitting in abeyance for as long as ICE wants you to, and yet how is that different from asking that we hang on to it for as long as ICE wants us to? I think in my experience, ICE is not intending to remove if there's a pending petition for review because that activates Rule 18 and that protects. But if there's a decision on the merits and it's unfavorable, I think that it makes ICE more inclined to execute that removal order. This is the enforcement branch. But all they have to do is now. The Office of Immigration and Litigation is sort of finished with the case when the case is finished. And so it's only the Enforcement Office that's looking at the case after the mandate issues. So there's sort of disagreement between two hands of the government as to what to do? I think that's a question for Respondents' Council, but certainly the Department of Justice is indicating that the case could be administratively closed while they make a decision and while Ethan matures. But ICE, of course, could also reconsider its previous declination of prosecutorial discretion based on the Doyle memo as soon as that memo takes effect. And if we follow your request, we remand it to the BIA. The BIA rejected the administrative closure. What then happens? What's the next step that would then occur? Yeah, I mean, I think that the court would retain jurisdiction to then reactivate and make a decision on the merits of this petition for review. And, of course, any issues that were reviewable in the board's subsequent decision could be combined, and this court could then decide both issues at the same time, both petitions at the same time. Okay, thank you. You're welcome. Thank you, Counsel. At this time, if Attorney Estrada would introduce himself on the record to begin. Yes, good afternoon, Your Honors. Carlos Estrada on behalf of the petitioners here. I think Judge Barron asked a question as to the merits of the case. There is actually sufficient evidence here that the case should be decided on the merits in favor of the petitioners. One of the glaring and obvious reasons is that the BIA in their decisions is found at administrative record page four. They do say that they received evidence, but they did not consider it because it was not submitted below. Now, that alone, Your Honors, should be enough to remand the case for consideration of that evidence or remand to the IJ for consideration of that evidence. Specifically, the board said we acknowledge that the respondents submitted additional evidence on appeal, including evidence that their son now has an IEP. We have not considered the documents the respondents submitted with their brief as we review the records as it existed before the IJ. So, but then the BIA then goes on to say that the documents submitted by the respondent, and this would be Mr. and Mrs. Licurgo, do not persuade us that if remanded, the outcome of the case would be likely different, would likely change. That's a huge contradiction there. They're saying that they received the documents, but they did not review them. I thought they treated the new filed document construed as a motion to remand, and then they were simply saying that construed as such, it didn't meet the standard for remand because it wasn't likely to change the outcome. Right, that is correct. But that's normally what happens with the BIA. You know, when there isn't a motion to remand filed by counsel, then they review any additional evidence. They construe that as a motion to remand, and they're saying that, when the one thing they're saying that they did not review it, but then they're saying that it's not enough to remand. So that's one of the reasons to grant the petition for review on the merits. Now, the Attorney General also suggests that they could do consular processing, and for that they talk about a provisional waiver in admissibility. Well, unfortunately, in order to obtain a provisional waiver in admissibility, you have to have a qualifying relative, and a qualifying relative cannot be a U.S. citizen child. It can only be a spouse or a parent of the petitioners. The qualifying relative cannot be a child, even if the child is over 21. Presumably, as time goes by, the child's condition may change, and circumstances may change. What would happen if you had another, a new expert who was knowledgeable in procedures in the country to which he would be sent, and could fill that hole in the evidence? Would that give you a basis for reopening before the BIA? Well, normally, that evidence was not available at the time, and one of the reasons that I brought up the reason that Ethan has an IEP now is that that evidence was not available at the time. The letter was issued, I believe, was after the decision from the IJ, so that evidence was not available at the time. Yeah, obviously, if there's additional evidence, we can always file a motion to reopen, I suppose, and we could do that, but it's sort of discouraging when- And the BIA could put that motion to reopen on administrative closure, couldn't it? They could, yes, I believe so, yes, absolutely, yeah. So that's certainly another avenue to pursue, Your Honor, but like I said, also- Could that be filed now, simultaneously with this proceeding? Well, we're limited to motions to reopen. There's a limit, but if additional, it would have to be pretty much a response to a motion to reopen because I think the time for filing a motion to reopen has passed, and that's why we tried so hard to get the government to agree to a motion to reopen and dismiss the proceedings. And initially, that was the plan, but for some reason, they decided we just received that notice that they would not do it. Maybe this is a question for government counsel, but if the government counsel can agree to the proposition that's being put before us, why couldn't they agree that getting an updated, current, holistic view of medical conditions here and in the country to which the child would go, they would agree to get that update to make sure that the removal is proper? Sure, and that's something that we are also, we would be willing to do, Your Honor. But I guess I started to say it's a little bit discouraging because every time we try to do something, the government seems to move the goalpost a little bit and then ask us to, or deny without explanation, why they did not agree to a freement or to reopen the case, Your Honor. But like I said, I am willing to keep on working on this case for as long as it takes, Your Honor. But we need a partner here, and that would be the Attorney General, obviously. But the pleasant thing is that although they're not a partner, they also don't want us to decide the case. Right. Well, we, like I said, we are fine with administrative closure. We're fine with, my preference obviously would be to win on the merits. But if that's not going to happen, then absolutely we would take administrative closure at any time. Do you have any other questions? Judge Scala, do you have anything? I don't. Thank you. Then I would like to cede the rest of my remaining time to Ms. Riamuto. Thank you. Thank you, Your Honor. With just the two minutes that she reserved. Yeah. Thank you, counsel. At this time, would Attorney Groff please introduce herself on the record to begin? Fifteen-minute response. Good afternoon, Your Honors. May it please the Court. Stephanie Groff for the Attorney General. Your Honors, it is inappropriate for this Court to remand for the Board of Immigration Appeals for the consideration of administrative closure as there is no Before you start down that road, could you just explain why you support judicial administrative closure? Sure, Your Honor. So just a quick reminder, back in October when we were here for oral argument, the government was open to the idea of the camp process, as at no point had petitioners sought prosecutorial discretion. When we went into that camp process, petitioners then reached out to ICE, and I will note that amicus stated that ICE has never considered prosecutorial discretion in this case, and that is just incorrect. As we stated in the status report, petitioners did reach out to ICE, and even though this Doyle memo and other memo were enjoined by United States v. Texas, ICE all over the country has still been reviewing cases and deciding on their own with each case whether prosecutorial discretion should be granted. Here, the Office of the Chief Counsel, ICE of Boston, reviewed the case and determined that they were not going to exercise their inherent authority for prosecutorial discretion. Under the Doyle memo? No, just under their inherent ability. I understand that, but the Doyle memo is more specific as to the current administration's priorities. Yes, Your Honor. The Doyle memo, however, while the Department of Homeland Security's secretary memo was enjoined, various chief counsel offices have been reviewing, based on their own opinion, whether they think a case should move forward or not. The Doyle memo helps to show what the priority for the administrations are, but as the United States v. Texas decision showed, administrations, for the past years, five administrations total, have utilized their ability to determine which cases are not to go forward with. And here, ICE determined that PD should not be exercised. When we got that news, both parties worked with the mediator and determined that the best outcome for this case at the time would be proposed judicial administrative closure. I will note, however, that is not necessarily a position that the government was advocating, but we agreed to it. Why did you agree to it? Well, we were looking for alternative methods in this case, so we were amenable to it. Why are you amenable to it? Well, there are positive equities in this case, such as two U.S. citizen kids, one who does have health issues and education issues, and if this court were not ready to issue a decision on the merits, through mediation we determined that a motion such as the judicial administrative closure would be appropriate. Now, if this court is not willing to do that, we are very happy to move forward and have this court issue it. What's underlying my question is just my puzzlement. The reason, presumably, the government has suggested to us judicial administrative closure along with your opponent. Presumably that's because you don't plan to remove the individual. Well, Your Honor, at this time... And so I guess I'm just a little bit flummoxed why, if that's the case, you're not agreeing with the petitioner to administrative closure within the executive branch rather than saying, well, we don't plan to remove him, so you should just hold it, and if you hold it forever with no time date, that's fine by us, but we should proceed to the merits. It just seems like a very strange position for the government to take. It is a unique position, but I do think it's important to clarify how there are two distinct forms of administrative closure. It's confusing because they are the same name. No, it's not confusing. I perfectly understand the distinction. What's confusing to me is why the government's drawing the distinction. Why is it you would be willing to agree to judicial administrative closure but not administrative closure by the BIA? Why would that be? Sure, Your Honor, and the main reason is because sending this case back will invalidate the final order of removal that the Department of Homeland Security has obtained, and to send it back for something that neither party has asked for, petitioner's counsel or the government for administrative closure, would be inappropriate. That is, for instance, say this court were to decide that— At this stage, how could they? What could they do if the problem is that they haven't asked for a motion for administrative closure? What could they do at this stage to solve that problem? Yes, Your Honor, and what they can do is, as petitioner's counsel noted, is they could file a motion to reopen right now with the Board of Immigration Appeals and ask for administrative closure. As I noted back in October, petitioners could also file a motion to reopen for, say, ineffective assistance of counsel as they make claims that their prior attorney made choices that put them at a disadvantage, say by filing for asylum, withdrawing it, not submitting evidence. If new evidence were to be obtained, such as an expert witness report, the appropriate method would be for the petitioners to file with the board. It's not appropriate for this court to remand when there's no error in the order. It would invalidate that final order, and again, no one has asked for administrative closure. Let me ask a practical question. Yes, Your Honor. Presumably somewhere in—you say you have a client, which you do, the United States, but it's an unusual client with many heads and hands. Somewhere along the line, some person gave the okay for you to agree to the type of administrative closure that is being advocated to this court. Are you suggesting to us that if there was a motion to reopen before the BIA and accompanying it a motion for administrative closure by the BIA, that that same person wouldn't be the same decision maker? No, Your Honor, and yes, it is a bit complicated, but I'm happy to kind of break it down. So our client is the U.S. government. I represent the Attorney General. However, another part of that client is the Department of Homeland Security, and they're specifically Immigration and Customs Enforcement, ICE. They represent the government both before an immigration judge and the Board of Immigration Appeals. When it gets to this level, before the circuit courts, it's the Department of Justice's Office of Immigration Litigation, which is our office. And a lot of this is actually explained in the Doyle memo that was submitted in the 28J. OIL, my office, does have the ability to look at these cases and determine whether or not we see it as a priority and whether it would be in the best interest to potentially agree to a judicial administrative closure like the Ninth Circuit or like the Jacobson process in the Second Circuit. However, for things that happen before the Board of Immigration Appeals and the immigration judge, those discretionary priority determinations, that's in the full discretion of the Department of Homeland Security. Our office does work with ICE. We communicate with them, but at no point is it appropriate for our office, higher up than me, to tell the Department of Homeland Security how to exercise their own prosecutorial discretion. And so that's really the inherent issue is there are two different forms here, but us agreeing to judicial administrative closure was something that our office agreed to in mediation with the Petitioner's Council. I get it. Thank you. Isn't that other office the same office that would execute the removal order if issued? Well, it's a little even more complicated than that. So the Office of the Chief Counsel, which are the attorneys that represent ICE before the immigration judge and the Board, again, it's under the umbrella of ICE, but the removal orders are executed by a part of ICE called the Enforcement and Removal Operations. It's called ERO. They are the removal officers. They make the determinations whether or not someone should be removed. And I do want to point out, I believe it was during Petitioner's Council's portion, Judge Kayada asked about removal and deferral, and I think Judge Barron did too. There is something that petitioners could seek. Say this court were to decide on the merits to issue a mandate to find in favor, uphold the Board's decision, petitioners have the ability to reach out to ICE, ERO, this Enforcement and Removal, and seek a stay of removal and stay of deportation. It's a form you can fill out. You just explain, hey, we have these positive equities. We are not necessarily a priority. Could you not remove us? That's an option. Could they do that now while the case is before us? No. So the only option they have now would be to, again, seek prosecutorial discretion, which they did. And ICE, OPLA, Boston did decline it. I will note that there is no necessarily rule on how many times you can seek prosecutorial discretion. If petitioners want to reach out again, say, hey, this U.S. v. Texas case has been decided. Could you reconsider? But, again, that decision is firmly within the Department of Homeland Security and not within this court's jurisdiction. Let me ask you another practical question. Yes, Your Honor. The procedure that the parties are agreed upon in asking us to do, that procedure ends, blows up at the behest of ICE saying we now want to remove. Well, no, Your Honor. And someone would notify us that we should take it off administrative review. You're saying that this court were to grant administrative judicial? Yes. Oh, yes, Your Honor. So it could come about in various ways. There's been examples when- But ICE would have the ability to end it. The Department of Homeland Security would. If they have an interest in removing a petitioner, such as the petitioners here, local rule 18 in this court requires that we give them notice. Yes, I'm familiar with that. But under the other procedure, if you couldn't do this, the reopening procedure, it would still be ICE that would have to agree to the removal before it could occur. So it gets a bit murky. But if the petitioners were to seek a motion to reopen right now at the board, which would be separate apart from this, ICE would have the ability to either agree to reopening or they could oppose it. And then it's the Board of Immigration Appeals that would decide. If the board were to reopen, then that final order of removal that I mentioned earlier is no longer valid. It is reopened. The case can be readdressed. They can decide on administrative closure. If there's more evidence, they can address it that way. But that final order of removal, the board has the inherent authority to determine. This case is reopened. This order is no longer. And that's why remand from this court would be inappropriate. I understand why you don't want remand because it takes away the order. I guess what I'm trying to figure out is since there's a willingness on the part of the government to have delay prior to us issuing a ruling, even if the ruling was an affirmance of the removal order, since at least there's shared agreement between the parties on that score, what options are there that the government would approve of that during this period of delay could proceed that might result in a favorable outcome? Obviously ICE would have to exercise its discretion, DHS, short of us resolving the case at this point. Because there is a question of judicial resources already. A lot is being spent. And a lot is being spent in a situation which the government is saying, you know, it's fine if you never spend. So I'd like to know, before we take the trouble of trying to get to the resolution of the merits, if there's something other than just pure judicial disclosure, which is not so easy to fit into the Lehman box, that from your perspective after all you've heard today, strikes you as something quite constant with what you're asking as a procedural court. Well, the government is open and amenable to even adopting, if this court were to adopt something similar to the Second Circuit's Jacobson process, in that it might honestly be easier for this court to issue a motion to dismiss without prejudice. What then happens in Jacobson in the Second Circuit is those cases are spent... To me, I understand that process. Is there anything short of that? Because that does raise questions about our steps to the appellate jurisdiction. Some courts include it. So in Jacobson, the court doesn't... It's essentially off this court's docket, and if, say, they have a forbearance policy, so this court could adopt something similar, say, give 21 days' notice, if ICE or the government or Petitioner's Council are ready to go back and issue a decision, it could come back to you. I guess that's what I said. Is there some period of time in which the government is open to a certain type of motion being filed by a petitioner that strikes you as the kind of motion that might have some different look than the look that happened during the camp process, which was decidedly self-procedural discretion? Because I hear you suggesting, well, maybe it would. Well, sorry, Your Honor. Could you ask that again? I'm just having trouble understanding. So there's judicial administrative closure and then the Jacobson process. I'm trying to figure out what the judicial administrative closure, from the government's perspective, could be pegged to, short of just, here's the case, don't decide it. Yeah, well, it's... So you say it can't be pegged to a consideration of cross-patrol discretion because that was already exercised, but then you're also saying, well, maybe it could be. But then the only way that would really happen is what? Would there be a new motion to reopen could be filed? I guess I'm just not quite understanding the government's position as to what's supposed to happen here, other than you recognize the obvious equities of the case. No one seems to think this is much of a priority, and yet the situation is that we're moving towards a resolution in which the government also takes the view that there should be a firm removal order. Sure. Let me just clarify. The Department of Homeland Security, by denying prosecutorial discretion, that is their indication that they would like this final order of removal to continue on, to not be invalidated. While we don't have a specific email or note saying this is a priority, the Department of Homeland Security is viewing this as one which they do not want to reopen and terminate, which this administration is utilizing for prosecutorial discretion. May I continue on and finish? Yes. Thank you. However, through judicial administrative closure, Amicus Council talked about the Ninth Circuit and their utilization. Even after SARCAR, Amicus Council is correct that the Ninth Circuit is still granting judicial administrative closures, and there are various reasons why. If this court were to, say, adopt that process, it could be in place that, say, 21 days notice if this court wants, or if ICE is ready to potentially remove them, if either side, whether it be the respondent or petitioners, want to bring this case back before this court and to issue a decision on the merits. However, it helps the Ninth Circuit prioritize their cases. Both the JAC process in the Ninth and Jacobson process in the Second came after years of discussion with various parties. In Jacobson, there were discussions with the Department of Homeland Security, the Department of Justice, and the Second Circuit judges about how to handle the various cases where people were not being removed. That process came about in the In Re Immigration decision. JAC for the Ninth came about from the clerks in the court stating, there is a huge caseload here. We don't have all the resources to answer these. Oil my office. Work with the Petitioners' Council. Decide if you believe it's not a priority to potentially close it administratively. Again, whether the Department of Homeland Security views a case as a priority and issues their prosecutorial discretion is inherently different than the Department of Justice, at this level, addressing their discretionary authority. And the Department of Homeland Security's discretionary authority is not something that can be reviewed. And the Texas decision specifically states that. There is nothing, no meaningful standards that courts can review whether the executive branch determines who or who not to remove. But let me ask you about another procedure that's come up here indirectly, and perhaps they don't understand it fully. But from time to time, we do stay cases, put them into abeyance, because something may happen back in the trial court, for example. We may seek an indicative ruling from a trial judge, and we'll stay the appeal until we get it. If here a motion for reopen was filed now, if that were granted, it would potentially move this whole appeal. Yes. So that would provide the sort of rationale that we sometimes use for staying an appeal. Then the motion to reopen goes before the BIA, and the BIA would be asked to put it on administrative closure, might or might not do it. Well, so that is another option. I also know Petitioners' Counsel and Amicus have asked this court to hold it in abeyance for the Supreme Court's decision in Wilkinson. That's also another option. However, here the government would request that that is not how we move forward, especially because right now there is no motion before the Board of Immigration Appeals. Right. But what solves that problem? That's what I'm saying. Is that just a matter of Petitioner just needs to file the motion to reopen, and then if you would both be coming here saying, yes, it makes sense, let's wait and see what happens? Well, that would need to be, again, a decision by our office, which I probably cannot unilaterally make, but it is something that we could consider. However, for their argument that we should hold this case in abeyance for Wilkinson, as we noted in our supplemental brief, we don't believe that is necessary, especially because this court has held in Domingo-Mendez that even assuming jurisdiction that you can look to the specifics of the case, which we would argue here, are in favor of the Board's decision denying cancellation of removal. Are there any further questions? No. Great. Thank you so much, Your Honors. Thank you, Counsel. At this time, would Attorney Realmuto please reintroduce herself on the record to begin? She has a two-minute rebuttal. Thank you. Trina Realmuto for Amicus National Immigration Litigation Alliance. Herein lies the problem. In the camp process, the government is represented by the Attorney General, but the decision-maker on prosecutorial discretion, which is the OPLA, the ICE attorneys, is not at that mediation. And so we have a situation where the decision-maker is off making the decision, not really involved in what's happening in this petition for review before this court. With respect to pegging either judicial administrative closure or an abeyance to a motion to reopen, just conferred with Petitioner's Counsel and he is amenable to doing that, I will say that the way to get the case back before the BIA is either vacate or a joint motion to reopen, which would require ICE's agreement, or, third, a late motion to reopen based on equitable tolling, which is difficult and it could come back before this court simply on the tolling issue. Well, that would be if it were put on administrative closure by the BIA before deciding. But the board wouldn't decide the administrative closure issue without first deciding if the motion was timely under equitable tolling. In other words, it wouldn't put the motion to reopen on administrative closure? It can't put the motion to reopen on administrative closure. It can only get to administrative closure if it reopens, which is why a vacater is another way to do it. And I think that the motion to reopen would have to have new facts or something like that to justify it not being timely. Right. And if you indulge me for 20 seconds, I'll just tell you how I think that you could vacate on the merits, which is the opening brief in this case says that petitioners were unfairly vaulted for the lack of corroboration. The IJ asked the counsel, what about this corroboration at AR 262? He said, I wasn't able to get that kind of documentation. But LAC and this court's precedents in Ex Cuna Garcia and Molina Diaz require that it's the applicants that explain why they can't get the corroboration. And that makes sense because if applicants were asked, they could easily reveal that they were never told they needed to get corroboration. And that would inform the immigration judge's decision about whether or not a continuance was warranted to allow them to get that corroborating evidence. There's nothing in the record showing that the applicants would have said that. There's the whole transcript in the record where the IJ never once asks. No, no, no. I didn't ask that. I said there's nothing in the record saying that had they been asked, the applicant would have said what you said they could have said. But they don't have to show that because the statute puts the burden of explaining the lack of corroboration on the applicants. And they have to be asked in order to have, and that's why it's unfair that the IJ... There's no prejudice. Prejudice is presumed. Exactly. If you look at AR 262, the IJ tells counsel, use your closing argument to summarize... I said there's no case of saying prejudice is presumed in that circumstance. Yeah, it's a statutory... It's your cases. The violation is Exuna Garcia and Molina Diaz versus Wilkinson. Your cases have said that. Last but not least, I just want to thank the court for allowing AMBICUS to participate in argument today. We are a membership organization of attorneys who are engaged in federal court litigation. And it's in the interest of the organization and our members to find alternative resolutions to petitions for review where the case is a law enforcement priority. There's no determination to remove, and there's other pathways to legal status available. And it's also in our interest to work with the courts to promote judicial administrative closures and aspects of that like that will sustain future administrations and be available to non-citizens. Thank you. Thank you all. Thank you. Thank you, counsel. That concludes argument in this case. All rise. This session of the Honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court.